All right. Case 18-1869, John Doe v. Columbia College of Chicago. Thank you, Your Honor. Come on up. It pleases the Court, on behalf, my name's Eric Rosenberg. On behalf of John Doe, I'd like to thank you for this opportunity to discuss this case, which is a critical issue for college students like John Doe, who find district courts dismissing their Title IX claims and state law claims after universities erroneously suspend them based on false allegations of sexual misconduct. Here, the district court's dismissal of Doe's complaint neglected bedrock principles in the Supreme Court's Twombly and Iqbal, as well as this court's Roberts decision, which mandate the district court construe evidence in favor of Doe, while evaluating Columbia College's motion to dismiss. This error stems, in part, from the district court's acknowledgment that Columbia manifests bias in favor of students who accuse other students of sexual misconduct, even though Columbia's policies mandated a bias-free, impartial disciplinary proceeding. This acknowledgment provides one of the two foundation stones for reversing the district court's decision. The second is found in the erroneous finding that Columbia's favoritism of accusing students did not qualify as actionable gender bias, gender discrimination, even though Doe presented plausible circumstantial evidence that Columbia's view of accusing students were females, who must receive preferential treatment over the male students they accuse. For example, when combined with Doe's other gender bias evidence, there were two federal investigations of Columbia by the Department of Education's Office of Civil Rights, and those were temporally connected to the case at issue here. And those issues meet or exceed the evidence in 17 different courts, which looked at that type of evidence and determined that that type of federal pressure qualified as triggering actionable gender bias. What are the factual allegations in your complaint that best demonstrate discrimination based on gender rather than discrimination based on one's status as an alleged offender or victim? Well, there are multiple examples of gender bias. One is the OCR investigation, which I said 17 courts have determined to be indicative of gender bias, because what was happening was at this time frame. No, no, no. Let's talk about your complaint. That is the complaint. Well, I'm saying that the same thing. In your complaint. In our complaint, we have two OCR investigations of Columbia, and what is happening is the complaint, five pages of the complaint, talk about the federal pressure at the time, which was if you did not execute or show preferential treatment to female students, the federal government could take your federal funding. Now, we have more than just the OCR complaint. We have the fact that the university, in this case, is partnering with multiple organizations that manifest anti-male stereotyping. I have to stop you right there, because I have a terrible problem with that argument of yours, and I'll tell you why. Why would merely hosting or advertising events,  signify an anti-male bias? When sexual assault occurs much more frequently against women, why would it be anti-male to focus some outreach toward women? And doesn't it benefit men as well to address sexual assault against women? Isn't it helpful to men? To answer your question, Your Honor, this is a motion to dismiss with the standardist down here. We're not at summary judgment stages. And what were happening, all of the instances are linked to gender-specific issues here. So for example, they link themselves to a website that, let me find it here. You're talking about claims under Title IX. Claims under Title IX, yes. So if I could, if you bear with me one moment, I'll find that. For example, one of the organizations they connected to was the Presence of Yes, which is a social media campaign. And that prompted postings such as, teach boys they are not entitled to women's bodies. It also included statements such as, men's sense of sexual entitlement are. Isn't that helpful to men? Your Honor, there are ways to stop sexual assault without vilifying people with sexual stereotypes. If, for example, would it be different if Columbia were putting out presentations that women should dress less provocatively, and that would reduce sexual assault. You can address sexual assault without vilifying any gender, and Title IX requires that. Now, it may turn out that in the end, those are not enough to get past a motion for summary judgment. But what we need here is plausible, circumstantial evidence of gender bias. So we have OCR investigations. We have the partnerships with Take Back the Night, all of those organizations you mentioned, which are all in the complaint, are linked to statements such as, No, no, no, stay in front of the mic. Such as, they say that they are there to advance the rights of women. They identify victims as women. They do not identify them as men. And so as a result, you can advance these issues without vilifying men. And that's all we're saying. When you partner that with the other instances, in this case, for example, as you well see, my client is physically attacked, verbally attacked, and in writing attacked, because of his gender. And the district court says, Oh, well, no, it's not. They didn't mean it as his gender. But they're not tying that to anything. This is not a motion for summary judgment. It is a motion to dismiss. You see, what bothers me about your brief is that there's a blurring of the distinction between conduct related to gender and that related to victims. Throughout the briefing. I mean, you argue that Columbia, as you just did, explicitly encourages participation in what you call anti-male public awareness events. Nothing in the airing, or even encouraging of those events, indicates any anti-male bias. They oppose sexual assault. Well, they don't actually. Even if they do focus more so on sexual assault by men, there's nothing anti-male in such an event because both women and men want an end to sexual assaults and both benefit from these programs that encourage the reporting of such crimes. And men, of course, are victims of sexual assaults and they benefit from activities that limit the shame and the silence around sexual assault. And all the things you're saying are true statements, but they are not in the complaint. There is nothing in the complaint that would suggest that any of those organizations are interested in protecting men from sexual assault. There's nothing in those. The complaint says just the opposite. But let's move beyond just the Title IX issue to the other side of that equation. Because if, as the court acknowledges, there is bias in favor of the accused, accusing student against the accused student, then you must have breach of contract claim. No, you're talking about the district court acknowledging that. The district court repeatedly acknowledged that there was bias in favor of accusing students,  because it wasn't bias in favor of a gender. Now, if that were true, and we're not saying it is, we believe it was because of gender, if it were true, you must have a breach of contract claim because this policy promised the students that there would be an impartial adjudication of sexual misconduct. So if the court is saying on one hand, yes, it's biased, then it cannot, on the other hand, be not a breach of contract. And we have identified- You're basically saying your contract claim separates itself from the Title IX. They're totally separate, Your Honor. Well, because does the bias determination by the district court or the mention, or however you wanna put it, continue over with that same bias in the contract issue? Well, absolutely, because the court is acknowledging that in the disciplinary proceeding, they'd acknowledged in the fact of how accommodations were distributed. They acknowledged bias caused the problem with that. If district court talked about bias was the cause of not allowing cross-examination. So the court is saying there was bias, but the contract promised an unbiased evaluation. And we cited 15 different cases from across the country that looked at similar issues, but in similar cases, which found that you could not dismiss a contract claim based on that type of a bias. So if I could boil down our argument, Your Honor, to what it is, is that A, the court's acknowledged there's bias. We say it's gender bias because all we have to show is a plausible basis, which is very low at a motion to dismiss stage, that you're not allowed under the court decision cited to make alternative explanations for that at this stage. This is what's happening, Your Honor, this morning with all due respect, is you're providing alternative explanations for our gender bias evidence that is not contained in the pleadings themselves at this point. And that discovery is the process to determine whether those things exist or not. Discovery is the process where you would ask the student who said, for example, boys like Doe are why I need feminism. You can ask that person, when you said that, were you saying that because of his gender or were you saying that because he was alleged to have sexually assaulted someone? To the person who punched my client in the face, you can say, did you punch him in the face because of his gender or did you punch him in the face because you heard he sexually assaulted somebody? That's what discovery is for. That's what summary judgment is for. It is not at the motion to dismiss stage. Well, if it breached your contract with the school, I guess, is what you're alleging. That's what I'm trying to separate out. What is the contract? The contract promised a couple things. The contract promised that there would be an impartial investigation. That's in the policy. So the policy, the student code says, we promise you, if you're charged with sexual misconduct, to an impartial investigation and adjudication of your discipline. And we're saying it could not have been impartial because the courts already determined it was biased. Another issue, for example, is that the policy provides and allows for cross-examination of accused during these hearings. In our case, they were not allowed cross-examination. The school is saying they don't need to because it's in their sole discretion to decide. And what we're saying, sole discretion was violated because of the bias. You're saying that, yes, if there's a contractual violation, it's a different process. You view it through a different lens. Well, a different lens. And you're saying you weren't allowed to cross-examine or you weren't allowed to do certain other things. I don't know what discovery, et cetera, in the whatever, what do you call the first one? Just the Title IX? I mean, what's it? The disciplinary hearing, you mean? Yeah, the one where the judge mentions this, said there's some bias in this whole situation, but it's not a determining factor. Let me skip away from that. Because I'm trying to stay focused on where there's a breach of contract that would mandate a different, a more expansive process. That's what I'm trying to figure out. I think I understand, Your Honor. And I just want to hear where that would come out. So I believe, I'll try to answer and tell me if I think I understand what your question is. So the fact is that a violation of the impartial promise does not need to be gender-specific to trigger a contract violation. It just needs to be, you were not, you, Columbia, were not impartial in adjudicating John Doe's disciplinary proceeding. And all we're saying is that the court has acknowledged that they were not impartial, that they were, in fact, biased in the way that they handled the case. And that is a per se contract violation. It's a dispositive fact. Well, but you want to go beyond that. That's where I'm just saying, what's the next step if we look at that, that there is possibility of a contract, as opposed to the Title IX determination that's made by the court, where the court mentions bias. In that circumstance, there was some bias. But you lose. In this case, it seemed like you're trying to go into another area of process to me. And then I'm just, that's not argued very well. That's all I'm saying. Well, all we're saying is that at a motion to dismiss stage, we have to show there was a duty of breach and causation. And we're saying there was a duty to provide an impartial process. It was breached because the court is acknowledging it was breached. And there was a damage. My client was suspended, thrown out of the school. So as a result, we should be able to move to summary judgment to do discovery on the rest of those issues. That's basically. So none of those were addressed. And that's why I'm saying, if you're saying there is a much more detailed process that's necessary, if it's a breach of contract. Absolutely. But all we're saying is that this is motion to dismiss. We deserve discovery on all these issues. And the claim should not be dismissed. OK. Mr. Warner. May it please the court. Scott Warner on behalf of Columbia College, Chicago. I'm going to start you right out. Because setting aside the obvious answer that a district court on a motion to dismiss could not make findings of fact, how do you respond to the argument in the reply brief that the district court found that Columbia implemented policies with a bias in favor of accusers that were the accused and therefore should be liable for a contract violation? We don't believe that's a fair characterization of the district court's opinion. In fact, in the first district court opinion in which the federal Title IX claims were dismissed and all of the other claims except for the contract claim were dismissed, what the district court said was at most there may be a showing that there was a bias in favor of victims, which is not the same thing as saying there was gender bias, which, of course, is the college's position. At that time, there wasn't a breach of contract claim pending before the court. And it wasn't until after the initial complaint was dismissed and then an amended complaint was filed that included a breach of contract claim that the court then had to address the breach of contract claim. But there was never a finding by the district court as we read the initial opinion that there actually was a pro-victim bias. It was rather a way of saying at most this is pro-victim and pro-victim doesn't mean anti-male. And indeed, the college's procedures are gender neutral on their face. With respect to the breach of contract claim, what counsel's argument does is really ignore what the actual elements of a breach of contract claim are under Illinois law. As the district court explained at great length in its thorough and well-reasoned decision, for one, student contract claims have to allege some sort of arbitrary and capricious conduct. And the district court found that that simply had not been alleged. More to the point, though, and even leaving that issue aside, for any contract claim, the plaintiff has to allege a specific and identifiable contractual promise that has actually been breached. And counsel hasn't done that in his briefs, either in the district court or before this court. It's not as though there can be some general nebulous type of language in a policy or procedure that gives rise to a contractual obligation. The case law is very clear that under Illinois law, there needs to be a specific and definite contractual promise. And that simply hasn't happened here, has not been alleged. And I would also add that this is one of those situations where the plaintiff has elected to attach a lot of documentation to the complaint that's properly considered as part of the complaint. And in there are many, many documents that show how the college went about addressing this internal complaint. And in fact, to go to the issue of bias, the documents that are part of the complaint actually show the absence of any bias. In fact, when the plaintiff raised a question about whether the appeals officer had some sort of a bias, mind you, based on a film that came out 20 or 30 years prior, the college stepped in and replaced the appeals officer at the request of the plaintiff. Similarly, this is not like many other decisions where an internal hearing panel adjudicating one of these matters simply takes the complainant's word on every issue over that of the respondent. In fact, in this situation, the hearing panel did not decide that there was substantiation for all of the female complainant's allegations. And so the hearing panel's decision, which again is considered part of the complaint, demonstrates the thoroughness with which the hearing panel evaluated the evidence, evaluated the allegations, and found that some were substantiated and found that others were not. You say the hearing panel, did you call it? Correct. Is that sort of the appeal level of what was decided? I can clarify. So there are three sort of phases to the internal investigation process. The first is an investigation where an investigator gathers information. Those documents are included as part of the complaint. Then, if there's a determination that there's reasonable cause to hold a hearing, then a hearing panel hears the matter, hears directly from the parties, and then makes a decision by a preponderance of the evidence as to whether or not the sexual misconduct policy was violated. So it's that middle step where the hearing panel evaluated the evidence, heard from the parties, and made a decision that some of the female complainant's allegations were substantiated while others were not. And then there was an appeal. And at the appeal stage, the plaintiff said, I believe that the appeal officer has a bias against men. The college didn't agree with that assessment, but nonetheless went ahead and replaced the appeal officer at the plaintiff's request, which, again, demonstrates the absence of any kind of bias to support a contract claim, let alone a Title IX discrimination claim. So in the contract issue, because of all the attachments, et cetera, you say it already had before it answers a lot of the questions that would come up in a contract. That's exactly right. And in fact, he's put himself out of court by attaching this documentation. That's, I assume, what you're saying. That's exactly right. And to turn back to the Title IX claims for a moment, this case is very different from the other decisions that have been reached by other courts of appeals where there has been some finding of sufficient allegations of gender bias. And the Sixth Circuit decisions in Doe v. Baum and Doe v. Miami, I think, provide two very helpful and useful examples. Here, and you heard counsel say it, what they have is pressure from the OCR, public awareness campaigns, and that's it. Doe v. Baum, the Sixth Circuit was very, very clear that that alone, pressure from the OCR, and even public scrutiny or public pressure, is not enough. Something else has to tip the balance. The standard is plausibility. And there simply isn't enough here to raise a plausible inference of gender bias. It can't just be speculation or solely conclusions. In Doe v. Baum, for example, there was specific evidence that the hearing panel discounted wholesale all the testimony from the male witnesses. Why? Because they were fraternity brothers of the respondent. But what the hearing panel didn't bother to mention, at least as alleged in the complaint, is that all of the witnesses who supported the female complainant were in the same sorority as her. And so the court looked at that and said, at the 12 v. 6 stage, that is a factual allegation that raises this above the purely speculative one. The modern Greek tragedy, you might say. And Doe v. Miami University is consistent with that. There were additional factual allegations that simply are not present here. And the notion that the plaintiff should be entitled to discovery to raise his claim above the speculative level is wholly inconsistent with Twombly and Iqbal. The pleading standard is very clear. There needs to be something that goes beyond speculation and conclusion to raise this above the speculative level. Is there any factual allegation in the complaint that would indicate that Columbia would treat a male victim of sexual assault differently from a female victim or a female perpetrator differently than a male perpetrator? Nothing whatsoever. Nothing at all. And in fact, there is a news article that's part of the complaint. And that demonstrates the care with which the college addresses these issues. In that, the Title IX coordinator is quoted as saying, regardless of any external pressure, we have to follow our policy and procedure and we're going to treat everybody fairly. That was a balanced article. In fact, that article even quoted an outside organization known as FIRE, which is well known for supporting the rights of respondents to sexual misconduct proceedings. FIRE? It's an acronym for the Foundation of Individual Rights and Equality, I believe, if I'm recalling it correctly. It's a third party organization that tends to go after institutions if they feel like they're doing something inappropriate. My point is they were referenced in that article, which demonstrates a balanced review of what was going on. There's nothing in the complaint to answer the court's question to indicate that there's any bias one way or another or any anti-male conduct going on here. Absolutely nothing. Doe versus Miami University, by contrast, included an affidavit from a local lawyer who was able to attest that Miami University, and again, this is just what's alleged in the complaint, had a pattern in practice of not disciplining female students who were accused of sexual misconduct. And there's nothing like that here at all. And so with respect to gender bias, that defeats the erroneous outcome in selective enforcement theories under Title IX. There are also two others, deliberate indifference and hostile environment. The same fate befalls those claims as well. Here, despite counsel's argument to the contrary, the statements from the female complainant and some of her friends that they thought the plaintiff was a rapist or had committed sexual misconduct, that's not sexual harassment. Those were not sexual comments. They weren't based on the plaintiff's gender. Rather, they were based on the fact that the female complainant and her friends believed that the plaintiff committed sexual assault. The misconduct in question just happens to be sexual in nature, but there's nothing about those comments that constitute sexual harassment. Moreover, even if for whatever reason the court decided against us on that issue, there's no basis for institutional liability. The statements of the female complainant and her friends are not the conduct of the college. The standard under Title IX is deliberate indifference. Was the college deliberately indifferent to that conduct? And once again, the documents that are attached to the complaint demonstrate the steps that the college took to address those allegations of non-sexual misconduct. Well, it seems when this is one of the problems with this whole issue, we all have kids at some stage. I have two girls and two boys, and they're between ages 20 and 30. And so it's not like I'm not tuned in, but it does seem almost never that some guy is going to complain that he was sexually assaulted. Well, that's, I understand. Because human nature alone means all he has to do is get up and leave. And the woman would say she wasn't able to do that. And that's all I'm asking is when we're looking at this, even going to a contractual thing about what the school should do, et cetera. I'm sure you don't have any example where a guy is claiming he was sexually assaulted. I do. It's not part of the complaint. I would note, however, that one of the OCR complaints that's referenced in the complaint, that is one of the OCR investigations, there's no allegation in the complaint as to the gender of the people who were involved in the situation that gave rise to that. That's all I can say. It's not part of the complaint. I would also note, Your Honor, to your question that the college's procedures themselves state very explicitly that sexual misconduct can occur between individuals of any gender or the same gender. So the college's procedures on their face are gender neutral in the sense that they recognize that there can indeed be allegations of sexual assault. Involving two males. Exactly. Or a female against a male. I mean, I do a lot of this work. In my experience, again, I realize it's outside the pleadings. I've seen it. So happy to address any other questions about the Title IX claims or the breach of contract claims. I would only add that with respect to the other state law tort claims, for the same reasons I've explained why we believe the Title IX claims and the breach of contract claims fail. There's simply no basis for any of the state law tort claims either. And we would respectfully ask that the judgment of the district court dismissing all claims against Columbia College be upheld and be affirmed. Thank you very much. Come on back, Mr. Rosenberg. Now, here's the problem. You only have 3 quarters of a minute left. I will give you another minute. You went way into your rebuttal time. So would you give him one more minute?  Thank you, Your Honor. Sure. It's a well-worn path of civil rights defendants to say that what they're doing is non-discriminatory. It's been going on for decades. Discovery is the mechanism to address those issues. There's been a lot of talk about what is in the complaint and how it proved that there was no bias. You've seen none of that in the briefing. They've been unable to call that information out of the exhibits. But what we've called out is discrimination, plausible gender discrimination, and absolute bias on the part of the university, which has been acknowledged by the court repeatedly. And if I could just, I guess, sum up, impartiality is the glue that keeps our society together. Impartiality is what's the core of our due process constitutional rights. Anyone who has children or have siblings knows that when their parents say to them, hey, I'm going to be impartial, that means something to them, particularly when you're adjudicating a dispute among siblings. But more importantly here, in this case, the failing of the university to provide impartiality, which the court has acknowledged in multiple locations here, proved that they engaged in arbitrary, capricious, and bad faith conduct that triggers contract liability. If you're biased, you cannot have engaged in, that's bad faith. And it was not, the court can't just disown multiple examples of why it is they believe the process was tainted by bias in the Title IX process, but then washed their hands of it when it comes to the contract place, because bias is bias. And you can't dismiss both claims if bias exists. Thank you. Thank you very much. Thanks to both parties. Case will be taken under advisement.